UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALASKA LABORERS EMPLOYERS RETIREMENT FUND, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | Civil Action No. 07-7402 CLASS ACTION COMPLAINT FOR VIOLATIONS OF |
| Plaintiffs, | ) ) | FEDERAL SECURITIES LAWS |
| vs. | ) ) | JURY TRIAL DEMANDED |
| SCHOLASTIC CORP., RICHARD ROBINSON and MARY WINSTON, | ) ) ) | |
| Defendant. | ) ) ) | |
| | ) | |

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Scholastic Corp. ("Scholastic" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of purchasers of the common stock of Scholastic between March 18, 2005 and March 23, 2006, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

5.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Alaska Laborers Employers Retirement Fund, as set forth in the accompanying certification, incorporated by reference herein, purchased the securities of Scholastic at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant Scholastic and its subsidiaries engage in publishing and distributing children's books worldwide.  The Company is headquartered in New York City.

8.      (a)      Defendant Richard Robinson ("Robinson") served as Scholastic's Chairman, Chief Executive Officer ("CEO") and President during the Class Period.

(b)      Defendant Mary Winston ("Winston") served as Scholastic's Chief Financial Officer ("CFO") during the Class Period.

(c)      Defendants Robinson and Winston are collectively referred to herein as the "Individual Defendants."

9.      Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.      It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above.  Each of the above officers of Scholastic, by virtue of their high-level positions with the Company, directly participated in the management of the

Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the Nasdaq National Market ("NASDAQ"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Scholastic, each of the Individual Defendants had access to the adverse undisclosed information about Scholastic's business prospects and financial condition and performance as particularized herein and knew (or recklessly

disregarded) that these adverse facts rendered the positive representations made by or about Scholastic and its business issued or adopted by the Company materially false and misleading.

13.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Scholastic common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme:  (i) deceived the investing public regarding Scholastic's business, operations, management and the intrinsic value of Scholastic common stock; (ii) enabled certain of the Individual Defendants and other Scholastic insiders to sell $22 million of their personally-held Scholastic common stock to the unsuspecting public; and (iii) caused plaintiff and other members of the Class to purchase Scholastic common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities of Scholastic during the Class Period, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant

times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Scholastic common shares were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Scholastic or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

        (b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Scholastic; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

20.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21.    Defendant Scholastic and its subsidiaries engage in publishing and distributing children's books worldwide. The Company operates through four segments: Children's Book Publishing and Distribution; Educational Publishing; Media, Licensing, and Advertising; and International.

22.    The Class Period commences on March 18, 2005.  On March 17, 2005, after the close of trading, Scholastic issued a press release announcing its financial results for its third quarter of 2005, the period ending February 28, 2005.  Defendant Robinson commented on the results stating in pertinent part as follows:

> With continued focus on margins, we achieved higher profitability in all operating segments last quarter. . . Improved results in Trade drove growth in the Children's Book Publishing and Distribution segment, while profits also rose in International and in Educational Publishing.

> With Internet orders up nearly 20% this fiscal year and now representing more than 10% of Scholastic's revenues, I'm also very excited by the recent appointment of Seth Radwell as president of e-Scholastic. Seth's experience building new print and electronic businesses, most recently at Bookspan and Doubleday Interactive, will help us accelerate this momentum.

The press release provided the Company's earnings expectations stating in pertinent part as follows:

> For fiscal 2005, the Company continues to expect earnings of between $1.50 and $1.70 per diluted share, excluding severance charges, on revenues of approximately $2.1 billion, and is on plan to generate free cash flow of $40 to $50 million.

6

23.     In response to the positive earnings announcement, the price of Scholastic stock surged rising from $36.20 per share to $38.62 per share on heavy trading volume.

24.     On July 20, 2005, Scholastic issued a press release announcing its financial results for the fourth fiscal quarter of 2005 and the full fiscal year, the periods ending May 31, 2005.  For the quarter, the Company reported that net income increased to $42.8 million or $1.04 per share. Defendant Robinson commented on the results stating in pertinent part as follows:

> We achieved our goals for profits and improved margins in fiscal 2005, while exceeding our target for Free Cash Flow. Impressive gains in Educational Publishing, improved results in International, a strengthening of our children's book businesses and disciplined financial management all contributed to these results. . . We're confident that the significant progress made in fiscal 2005, coupled with a strengthened management team, creates a solid foundation to expand margins and grow revenues in fiscal 2006 and beyond.

> Fiscal 2006 is off to a tremendous start with last weekend's phenomenally successful release of Harry Potter & the Half-Blood Prince. After selling a record breaking 6.9 million copies in the U.S. in the first 24 hours, our retailers continue to report very strong sales during the first week. We are extremely proud of Scholastic's role in helping make J.K. Rowling's brilliant book the largest book release in history.

With respect to the "Fiscal 2006 Outlook" the Company stated in pertinent part as follows:

> The Company expects total revenues of approximately $2.3 - $2.4 billion and earnings of $2.30 - $2.50 per diluted share based on the following outlook:

> 1. Revenue and profit growth in Children's Book Publishing and Distribution, reflecting significant sales of Harry Potter and the Half-Blood Prince primarily in the first quarter, as well as modest growth throughout the rest of the segment.

> 2. Growth across Educational Publishing, led by educational technology, which should continue to benefit margins.

> 3. Continued improvements in International and Media, Licensing and Advertising.

> 4. A focus on margin improvements and operating efficiencies, with continued attention to Free Cash Flow, which is targeted at $85 - $95 million.

25.     On September 22, 2005, Scholastic issued a press release announcing its financial results for the first fiscal quarter of 2006, the period ending August 31, 2005, and "reaffirmed its

outlook for fiscal 2006." For the quarter, the Company reported revenues of $498.4 million. Defendant Robinson commented on the results stating in pertinent part as follows:

> Record-breaking sales of Harry Potter and the Half-Blood Prince drove significantly higher results in Children's Book Publishing and Distribution and for the Company overall. Scholastic Education's strongest quarter ever also contributed to last quarter's improved results, with sales of educational technology demonstrating the continued success of our reading solutions strategy. These achievements reinforce Scholastic's leading position as a partner with families and teachers, helping develop children's reading skills and love of books.

The Company also reaffirmed its "fiscal 2006 outlook for revenues of $2.3 billion to $2.4 billion, earnings per diluted share of $2.30 to $2.50, and free cash flow of $85 to $95 million."

26.    The statements referenced above in ¶¶22, 24 and 25 were each materially false and misleading because they failed to disclose and misrepresented the following material adverse facts which were known to Defendants or recklessly disregarded by them:

(a)    that the Company's Educational Publishing division was suffering from a variety of adverse factors which were causing it to experience declining results and it was not performing according to internal expectations;

(b)    that the Company's operations in the United Kingdom were not performing well and would have to be reorganized;

(c)    that the Company's financial results were materially overstated as it was failing to timely write-down the value of certain print reference assets and it was failing to properly reserve for certain bad debts; and

(d)    as a result of the foregoing, Defendants' lacked a reasonable basis for their positive statements about the Company and its prospects.

27.    Then, on December 16, 2005, Scholastic issued a press release announcing its financial results for the fiscal second quarter of 2006, the period ending November 30, 2005. For the

quarter, the Company reported net income of $66.9 million. Defendant Robinson commented on the results stating in pertinent part as follows:

> The impact of hurricanes on the Company, challenges in School Book Clubs and Continuities, and investments to restructure our business in the United Kingdom were all factors contributing to lower profits in the second quarter. . . Our business also showed many strengths, especially in School Book Fairs, Trade and educational technology sales. Significant free cash flow in the quarter also strengthened our balance sheet.

> Responding to the challenges we faced in the second quarter, Scholastic's management team is now implementing plans to improve performance in the second half of the year, particularly in the important fourth quarter. We are accelerating the U.K. turn-around efforts, streamlining Club promotions, booking new fairs, introducing new Continuity programs, trimming marketing costs and reducing overhead. Notwithstanding the challenges, we believe we will attain our financial goals for the year, based on these actions and strong first quarter performance. We expect to achieve revenues for the year of $2.3 to $2.4 billion, free cash flow of $85 to $95 million and earnings at the bottom end of the previously announced range of $2.30 to $2.50 per diluted share.

28.    In response to the disappointing earnings announcement, the price of Scholastic common stock declined from $33.10 per share to $29.30 per share on heavy trading volume. Defendants, however, continued to conceal the scope of the problems at the Company and maintained earnings guidance that they knew could not be met.

29.    Then, on March 23, 2006, Scholastic issued a press release announcing that its financial results for the third quarter of 2006, the period ending February 28, 2006. The Company reported a net loss of $15.5 million or ($0.37) per share. Defendant Robinson commented on the disappointing earnings release stating in pertinent part as follows:

> Our third quarter was disappointing, and based on our review of these results and their impact on the fourth quarter, we are reducing our outlook for the fiscal year. . . Promotion expenses in School Book Clubs continued to be higher due to the volume of direct mailings required as more customers than anticipated migrated to the core clubs in response to promotions. In School Book Fairs, staffing expenses increased during the quarter, in anticipation of fourth quarter fair bookings. Lastly, results in Educational Publishing were affected by lower educational technology revenues, reflecting greater seasonality in that business and a large district sale in the prior-year period.

Next year, based on customer reaction to thorough market tests conducted in School Book Clubs, we will focus exclusively on Scholastic branded clubs and discontinue Troll(R) and Trumpet(R), two smaller, less efficient clubs. We believe this focus on core clubs will substantially reduce overhead, promotion and fulfillment expense and increase profits. We also remain confident about growth opportunities for Scholastic Education, and for educational technology, where sales are up 18% this year and we have a strong pipeline of future sales prospects.

The Company also cut its "Outlook" stating in pertinent part as follows:

Given lower third quarter results and a revised outlook for the fourth quarter, Scholastic now expects full year earnings between $1.70 and $1.80 per diluted share, including approximately $0.15 per diluted share of expected severance expense, on revenues of approximately $2.3 billion. Free cash flow for the fiscal year is now expected to be between $70 and $80 million.

30.    In response to the Company's announcement, the price of Scholastic common stock declined from $29.42 per share to $26.04 per share on heavy trading volume.

31.    On July 20, 2006, Scholastic issued a press release announcing its financial results for its fourth fiscal quarter of 2006 and fiscal year 2006, the periods ending May 31, 2006.  For the fourth quarter, the Company reported revenue of $601 million and net income of $0.91 per share. For the fiscal year, the Company reported net income of $1.66 per share.  The Company disclosed that its financial results were negatively impacted by "costs associated with the write-down of certain print reference set assets and with the bankruptcy of a customer, incurred in the Educational Publishing segment, totaling $0.07 and $0.09 per diluted share in the fourth quarter and full year, respectively."

32.    The market for Scholastic's common stock was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements and failures to disclose, Scholastic's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Scholastic common stock relying upon the integrity of the market price of Scholastic's common stock and market information relating to Scholastic, and have been damaged thereby.

33.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Scholastic's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

34.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Scholastic's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Scholastic and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein when the true facts were revealed to the public and the price of Scholastic stock declined.

## Additional Scienter Allegations

35.    As alleged herein, Defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal

securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of

information reflecting the true facts regarding Scholastic, their control over, and/or receipt and/or

modification of Scholastic's allegedly materially misleading misstatements and/or their associations

with the Company which made them privy to confidential proprietary information concerning

Scholastic, participated in the fraudulent scheme alleged herein.

        36.     Defendant's scienter is further evidenced by the insider selling of Defendant

Robinson and other high-level Scholastic insiders as follows:

| Last Name | First Name | Date | Shares | Price | Proceeds |
|---|---|---|---|---|---|
| DEULL | CHARLES | 10/3/2005 | 21,400 | $37.45 | $801,430 |
| | | 10/3/2005 | 3,600 | $37.50 | $135,000 |
| | | 10/21/2005 | 5,000 | $32.66 | $163,300 |
| | | 10/24/2005 | 22,238 | $32.49 | $722,513 |
| | | 10/24/2005 | 15,203 | $32.53 | $494,554 |
| | | 10/24/2005 | 12,497 | $32.56 | $406,902 |
| | | | 79,938 | | $2,723,699 |
| | | | | | |
| FORD | BETH | 9/28/2005 | 5,690 | $37.28 | $212,123 |
| | | 10/3/2005 | 9,310 | $37.31 | $347,356 |
| | | | 15,000 | | $559,479 |
| | | | | | |
| FORTE | DEBORAH | 3/22/2005 | 3,000 | $38.00 | $114,000 |
| | | 3/23/2005 | 5,000 | $37.15 | $185,750 |
| | | 3/29/2005 | 5,000 | $37.01 | $185,050 |
| | | 4/6/2005 | 3,082 | $37.00 | $114,034 |
| | | 4/7/2005 | 7,300 | $37.00 | $270,100 |
| | | 4/8/2005 | 2,400 | $37.01 | $88,824 |
| | | 4/15/2005 | 6,300 | $35.05 | $220,815 |
| | | 5/2/2005 | 22,000 | $35.01 | $770,220 |
| | | 5/2/2005 | 16,500 | $35.01 | $577,665 |
| | | 5/2/2005 | 8,818 | $35.00 | $308,630 |
| | | | 79,400 | | $2,835,088 |
| | | | | | |
| HARRIS | CHARLES | 7/29/2005 | 15,000 | $37.04 | $555,600 |
| | | 7/29/2005 | 10,000 | $37.45 | $374,500 |
| | | 8/1/2005 | 5,000 | $37.25 | $186,250 |
| | | | 30,000 | | $1,116,350 |
| | | | | | |
| HOLLAND | LARRY | 3/22/2005 | 5,000 | $37.64 | $188,200 |
| | | 3/23/2005 | 6,000 | $37.42 | $224,520 |
| | | 3/23/2005 | 5,000 | $37.61 | $188,050 |
| | | 3/23/2005 | 3,000 | $37.30 | $111,900 |
| | | 3/23/2005 | 2,900 | $37.23 | $107,967 |
| | | 3/23/2005 | 2,100 | $37.35 | $78,435 |
| | | 3/23/2005 | 2,000 | $37.30 | $74,600 |

| | | | |
|---|---|---|---|
| 3/23/2005 | 1,000 | $37.21 | $37,210 |
| 3/24/2005 | 1,973 | $37.75 | $74,481 |
| 3/29/2005 | 10,000 | $37.04 | $370,400 |
| 3/29/2005 | 5,000 | $37.05 | $185,250 |
| 3/29/2005 | 2,000 | $37.28 | $74,560 |
| 3/29/2005 | 2,000 | $37.26 | $74,520 |
| 3/29/2005 | 2,000 | $37.16 | $74,320 |
| 3/29/2005 | 1,200 | $37.23 | $44,676 |
| 3/29/2005 | 1,000 | $37.22 | $37,220 |
| 3/29/2005 | 1,000 | $37.25 | $37,250 |
| 3/29/2005 | 1,000 | $37.24 | $37,240 |
| 3/29/2005 | 1,000 | $37.23 | $37,230 |
| 3/29/2005 | 1,000 | $37.13 | $37,130 |
| 3/29/2005 | 408 | $37.12 | $15,145 |
| 3/29/2005 | 387 | $31.57 | $12,218 |
| 3/29/2005 | 300 | $37.26 | $11,178 |
| 3/30/2005 | 5,000 | $37.35 | $186,750 |
| 3/30/2005 | 4,000 | $37.15 | $148,600 |
| 3/30/2005 | 3,000 | $37.27 | $111,810 |
| 3/30/2005 | 3,000 | $36.80 | $110,400 |
| 3/30/2005 | 2,000 | $37.34 | $74,680 |
| 3/30/2005 | 2,000 | $37.35 | $74,700 |
| 3/30/2005 | 2,000 | $37.34 | $74,680 |
| 3/30/2005 | 2,000 | $37.20 | $74,400 |
| 3/30/2005 | 2,000 | $37.28 | $74,560 |
| 3/30/2005 | 2,000 | $37.20 | $74,400 |
| 3/30/2005 | 2,000 | $37.15 | $74,300 |
| 3/30/2005 | 2,000 | $37.52 | $75,040 |
| 3/30/2005 | 1,000 | $37.19 | $37,190 |
| 3/30/2005 | 1,000 | $37.26 | $37,260 |
| 3/30/2005 | 1,000 | $37.18 | $37,180 |
| 3/30/2005 | 1,000 | $36.85 | $36,850 |
| 3/30/2005 | 1,000 | $36.75 | $36,750 |
| 3/31/2005 | 6,000 | $37.00 | $222,000 |
| 3/31/2005 | 95 | $37.50 | $3,563 |
| 4/4/2005 | 10,000 | $36.19 | $361,900 |
| 4/4/2005 | 10,000 | $36.59 | $365,900 |
| 4/4/2005 | 10,000 | $36.68 | $366,800 |
| 4/4/2005 | 10,000 | $36.64 | $366,400 |
| 4/4/2005 | 6,797 | $37.35 | $253,868 |
| 4/4/2005 | 5,700 | $36.25 | $206,625 |
| 4/4/2005 | 1,000 | $36.42 | $36,420 |
| 4/4/2005 | 1,000 | $36.43 | $36,430 |
| 4/4/2005 | 1,000 | $36.40 | $36,400 |
| 4/4/2005 | 1,000 | $36.35 | $36,350 |
| 4/4/2005 | 1,000 | $36.40 | $36,400 |
| 4/4/2005 | 1,000 | $36.42 | $36,420 |
| 4/4/2005 | 1,000 | $36.53 | $36,530 |
| 4/4/2005 | 803 | $36.35 | $29,189 |
| 4/6/2005 | 10,000 | $36.92 | $369,200 |
| 4/6/2005 | 5,920 | $36.97 | $218,862 |
| 4/6/2005 | 4,080 | $36.81 | $150,185 |

13

| | | | | | |
|---|---|---|---|---|---|
| | | 4/7/2005 | 10,000 | $36.35 | $363,500 |
| | | 4/7/2005 | 5,000 | $37.00 | $185,000 |
| | | 4/8/2005 | 3,000 | $37.00 | $111,000 |
| | | 4/11/2005 | 1,100 | $37.00 | $40,700 |
| | | 4/12/2005 | 10,000 | $36.91 | $369,100 |
| | | 4/12/2005 | 2,000 | $36.75 | $73,500 |
| | | 4/12/2005 | 2,000 | $36.45 | $72,900 |
| | | 4/12/2005 | 2,000 | $36.40 | $72,800 |
| | | 4/12/2005 | 2,000 | $36.36 | $72,720 |
| | | 4/13/2005 | 2,000 | $35.63 | $71,260 |
| | | 4/13/2005 | 2,000 | $35.75 | $71,500 |
| | | 4/13/2005 | 2,000 | $35.76 | $71,520 |
| | | 4/13/2005 | 1,000 | $35.61 | $35,610 |
| | | 4/13/2005 | 1,000 | $35.52 | $35,520 |
| | | 4/13/2005 | 97 | $35.76 | $3,469 |
| | | 4/19/2005 | 2,173 | $35.71 | $77,598 |
| | | | 227,033 | | $8,370,388 |
| | | | | | |
| JEMISON | MAE | 4/19/2005 | 2,000 | $34.73 | $69,460 |
| | | | 2,000 | | $69,460 |
| | | | | | |
| MALONEY | KAREN | 3/28/2005 | 4,000 | $37.50 | $150,000 |
| | | | 4,000 | | $150,000 |
| | | | | | |
| MARCUS | BARBARA | 3/22/2005 | 3,000 | $37.99 | $113,970 |
| | | 3/29/2005 | 5,000 | $37.05 | $185,250 |
| | | 3/30/2005 | 2,000 | $37.27 | $74,540 |
| | | 3/30/2005 | 2,000 | $37.25 | $74,500 |
| | | 3/30/2005 | 1,000 | $37.27 | $37,270 |
| | | 4/6/2005 | 5,000 | $37.00 | $185,000 |
| | | 4/12/2005 | 544 | $37.00 | $20,128 |
| | | 4/15/2005 | 6,456 | $34.49 | $222,667 |
| | | | 25,000 | | $913,325 |
| | | | | | |
| ROBINSON | M | 4/13/2005 | 6,290 | $36.10 | $227,069 |
| | | 4/13/2005 | 5,100 | $36.33 | $185,283 |
| | | 4/13/2005 | 3,020 | $36.34 | $109,747 |
| | | 4/13/2005 | 2,280 | $35.87 | $81,784 |
| | | 4/13/2005 | 2,200 | $35.56 | $78,232 |
| | | 4/13/2005 | 1,843 | $35.92 | $66,201 |
| | | 4/13/2005 | 1,800 | $36.25 | $65,250 |
| | | 4/13/2005 | 1,660 | $36.00 | $59,760 |
| | | 4/13/2005 | 1,300 | $36.29 | $47,177 |
| | | 4/13/2005 | 1,300 | $35.85 | $46,605 |
| | | 4/13/2005 | 1,300 | $35.61 | $46,293 |
| | | 4/13/2005 | 1,200 | $35.69 | $42,828 |
| | | 4/13/2005 | 1,100 | $36.27 | $39,897 |
| | | 4/13/2005 | 1,000 | $36.15 | $36,150 |
| | | 4/13/2005 | 900 | $36.36 | $32,724 |
| | | 4/13/2005 | 900 | $35.91 | $32,319 |
| | | 4/13/2005 | 818 | $35.88 | $29,350 |
| | | 4/13/2005 | 800 | $36.26 | $29,008 |

| | | | |
|---|---:|---:|---:|
| 4/13/2005 | 800 | $35.80 | $28,640 |
| 4/13/2005 | 800 | $35.54 | $28,432 |
| 4/13/2005 | 795 | $36.35 | $28,898 |
| 4/13/2005 | 700 | $35.66 | $24,962 |
| 4/13/2005 | 700 | $35.55 | $24,885 |
| 4/13/2005 | 600 | $35.93 | $21,558 |
| 4/13/2005 | 600 | $35.90 | $21,540 |
| 4/13/2005 | 600 | $35.78 | $21,468 |
| 4/13/2005 | 600 | $35.50 | $21,300 |
| 4/13/2005 | 500 | $35.94 | $17,970 |
| 4/13/2005 | 400 | $35.51 | $14,204 |
| 4/13/2005 | 310 | $36.13 | $11,200 |
| 4/13/2005 | 300 | $35.89 | $10,767 |
| 4/13/2005 | 300 | $35.68 | $10,704 |
| 4/13/2005 | 300 | $35.57 | $10,671 |
| 4/13/2005 | 300 | $35.52 | $10,656 |
| 4/13/2005 | 260 | $35.86 | $9,324 |
| 4/13/2005 | 200 | $36.38 | $7,276 |
| 4/13/2005 | 200 | $36.14 | $7,228 |
| 4/13/2005 | 200 | $36.11 | $7,222 |
| 4/13/2005 | 200 | $35.76 | $7,152 |
| 4/13/2005 | 200 | $35.73 | $7,146 |
| 4/13/2005 | 200 | $35.65 | $7,130 |
| 4/13/2005 | 200 | $35.56 | $7,112 |
| 4/13/2005 | 190 | $35.72 | $6,787 |
| 4/13/2005 | 100 | $36.41 | $3,641 |
| 4/13/2005 | 100 | $36.37 | $3,637 |
| 4/13/2005 | 100 | $36.03 | $3,603 |
| 4/13/2005 | 100 | $36.01 | $3,601 |
| 4/13/2005 | 39 | $35.59 | $1,388 |
| 4/13/2005 | 10 | $35.79 | $358 |
| 4/14/2005 | 4,300 | $35.75 | $153,725 |
| 7/27/2005 | 15,200 | $36.81 | $559,512 |
| 7/27/2005 | 15,000 | $36.76 | $551,400 |
| 7/27/2005 | 15,000 | $36.91 | $553,650 |
| 7/27/2005 | 15,000 | $36.86 | $552,900 |
| 8/2/2005 | 15,000 | $37.00 | $555,000 |
| 8/2/2005 | 15,000 | $37.18 | $557,700 |
| 8/10/2005 | 10,000 | $36.25 | $362,500 |
| 8/11/2005 | 20,000 | $36.37 | $727,400 |
| | 170,215 | | $6,219,923 |

**Total:**     **632,586**     **$22,957,711**

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

37.    At all relevant times, the market for Scholastic's common stock was an efficient

market for the following reasons, among others:

(a)    Scholastic stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Scholastic filed periodic public reports with the SEC and the NASDAQ;

(c)    Scholastic regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Scholastic was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

38.    As a result of the foregoing, the market for Scholastic's common stock promptly digested current information regarding Scholastic from all publicly available sources and reflected such information in Scholastic's stock price. Under these circumstances, all purchasers of Scholastic's common stock during the Class Period suffered similar injury through their purchase of Scholastic's common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

39.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the

statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Scholastic who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of
### the Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

40.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

43.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Scholastic common stock.  Plaintiff and the Class would not have purchased Scholastic common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

44.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Scholastic common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

45.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of Scholastic within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By reason of their positions as officers and/or directors of Scholastic, and their ownership of Scholastic stock, the Individual Defendants had the power and authority to cause Scholastic to engage in the wrongful conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED:  August 20, 2007          LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN (SR-7957)
DAVID A. ROSENFELD (DR-7564)


                          /S/ Samuel H. Rudman
                      SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)


Attorneys for Plaintiff

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

ALASKA LABORERS EMPLOYERS RETIREMENT FUND ("Plaintiff")
declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.    (a)    Plaintiff has been appointed to serve as a representative party for a class in the following actions filed under the federal securities laws during the three years prior to the date of this Certification:

*Staehr v. The Hartford Financial Services Group, et al.*, No. 3:04-CV-1740-CFD (D. Conn.)
*In re ChoicePoint, Inc. Sec. Litig.*, No. 1:05-CV-00686-JTC (N.D. Ga.)

(b)    Plaintiff is seeking to serve as a representative party for a class in the following actions filed under the federal securities laws:

(c)    Plaintiff initially sought to serve as a representative party for a class in the following actions filed under the federal securities laws during the three years prior to the date of this Certification:

*Black v. Martek Biosciences Corporation, et al.*, No. 1:05-cv-01224-MJG (D. Md.)
*Lasner v. World Health Alternatives, Inc., et al.*, No. 2:05-cv-1194 (W.D. Pa.)
*Zuckerman v. Scottish Re Group Ltd., et al.*, No. 1:06-cv-05853-SAS (S.D.N.Y.)
*Asher v. Baxter International, Inc., et al.*, No. 1:02-cv-05608 (N.D. Ill.)

SCHOLASTIC

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ⎧4 day of ___Aug___, 2007.

ALASKA LABORERS EMPLOYERS
RETIREMENT FUND

By: _____

Its: ___Chairman___

- 2 -

SCHOLASTIC

SCHEDULE A

SECURITIES TRANSACTIONS

Acquisitions

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 01/26/2006 | 14,900 | $30.04 |