UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ALASKA LABORERS EMPLOYERS : 
RETIREMENT FUND, Individually and On : 
Behalf of All Others Similarly Situated, : 
  :
                              Plaintiff, :         No. 07 Civ. 7402 (GBD)
  :
       -against- : 
  :
SCHOLASTIC CORPORATION, RICHARD : 
ROBINSON and MARY WINSTON, : 
  :
                           Defendants. : 
------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

                                      SIMPSON THACHER & BARTLETT LLP
                                      425 Lexington Avenue
                                      New York, New York  10017
                                      Telephone: (212) 455-2000
                                      Facsimile:  (212) 455-2502

                                      *Attorneys for Scholastic Corporation,*
                                      *Richard Robinson and Mary Winston*

## TABLE OF CONTENTS

**Page**

I. PLAINTIFF FAILS TO ALLEGE ANY FALSE STATEMENTS ................................... 1

    A. Revenue Recognition ........................................................................................ 1

    B. Reserves ............................................................................................................ 2

    C. Operational Problems Resulting From the FTC Consent Decree ..................... 3

    D. U.K. Operations ................................................................................................ 4

    E. Earnings Forecasts ............................................................................................ 4

II. PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION ................................................ 5

III. PLAINTIFF FAILS TO ALLEGE SCIENTER ............................................................... 6

    A. Plaintiff Has Not Pled Motive and Opportunity ............................................... 6

    B. Plaintiff Has Not Pled Conscious Misbehavior or Recklessness ..................... 8

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Group*, 47 F.3d 47 (2d Cir. N.Y. 1995) ..................................................................10

*Chill v. General Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) ......................................................................7

*Druskin v. AnswerThink, Inc.*, 299 F. Supp. 2d 1307 (S.D. Fla. 2004) ................................................7

*Gavish v. Revlon, Inc.*, No. 00 Civ. 7291(SHS), 2004 WL 2210269
    (S.D.N.Y. Sept. 30, 2004) ..........................................................................................2, 3, 10

*Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759 (S.D.N.Y. 2006) ...............................................................9

*Gross v. Summa Four, Inc.*, 93 F.3d 987 (1st Cir. 1996) .....................................................................2

*Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753 (7th Cir. 2007) .........................................................2

*In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832
    (N.D. Tex. 2005) ........................................................................................................................2

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474
    (S.D.N.Y. 2004) ........................................................................................................................9

*In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549
    (S.D.N.Y. 2004) ......................................................................................................................10

*In re CIT Group, Inc. Sec. Litig.*, 349 F. Supp. 2d 685 (S.D.N.Y. 2004) ............................................3

*In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367 (S.D.N.Y. 2004) ..............................................3

*In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266 (S.D.N.Y. 2006) ..........................................7, 8, 9

*In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281
    (S.D.N.Y. 2003) ........................................................................................................................6

*In re N. Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446 (S.D.N.Y. 2000) ............................................3

*In re Nokia OYJ ( Nokia Corp.) Sec. Litig.*,
    423 F. Supp. 2d 364 (S.D.N.Y. 2006) ..............................................................................3, 5, 8

*In re Nortel Networks Corp. Sec. Litig.*, 238 F. Supp. 2d 613
    (S.D.N.Y. 2003) ........................................................................................................................2

*In re Omnicom Group, Inc. Sec. Litig.*, No. 02 Civ. 4483(WHP), 2008 WL
    243788 (S.D.N.Y. Jan. 29, 2008) ..............................................................................................5

*In re Rhodia S.A. Securities Litigation*, No. 1:05 Civ. 5389(DAB), 2007
    WL 2826651 (S.D.N.Y. Sept. 26, 2007) ................................................................... 5

*In re Trex Co. Sec. Litig.*, 212 F. Supp. 2d 596 (W.D. Va. 2002) ................................... 2

*In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158
    (S.D.N.Y. 2003) ....................................................................................................... 2

*In re Winn-Dixie Stores, Inc. Sec. Litig.*, 531 F. Supp. 2d 1334
    (M.D. Fla. 2007) ...................................................................................................... 3

*In re Winstar Communications*, No. 01 CV 3014(GBD), 01 CV 11522,
    2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) ................................................... 5, 8, 9

*In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 DLC, 2005 WL
    375314 (S.D.N.Y. Feb. 17, 2005) ........................................................................... 5

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ............................................................. 6, 8

*Kinsey v. Cendant Corp.*, No. 04 Civ. 0582 RWS, 2005 WL 1907678
    (S.D.N.Y. 2005) ....................................................................................................... 8

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005) ........................................... 5

*Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117 (D. Conn. 2007) .................................. 2, 9

*In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000) ..................... 8

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ............................................................ 8, 9

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ........................................................... 4

*Stevelman v. Alias Research Inc.*, 174 F.3d 79 (2d Cir. 1999) ........................................ 8

*Teachers Ret. Sys. v. Hunter*, 477 F.3d 162 (4th Cir. 2007) ............................................ 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ............................. 7

**PRELIMINARY STATEMENT**

Two years after the close of the purported class period, Plaintiff still has not found any fraud at Scholastic. Plaintiff's Opposition ignores binding precedent and misrepresents numerous cases. And, instead of identifying any fraud, Plaintiff tosses up a hodgepodge of generalities that do not come close to the high bar set for pleading securities fraud. Congress amended the securities laws expressly to stop this sort of reverse-engineered stock drop case. The Complaint should be dismissed for failing to meet any of the three core requirements for stating a securities fraud claim: (1) failure to allege any false statements, (2) failure to allege loss causation, and (3) failure to allege facts giving rise to a strong inference of scienter.

**I.   PLAINTIFF FAILS TO ALLEGE ANY FALSE STATEMENTS**

   **A.   Revenue Recognition**

Scholastic fully disclosed its revenue recognition practices, including the methodologies used to establish reserves, which are all standard industry practices, as well as the amounts of the reserves. Elbaum Aff., Ex. 8 at 16-17, S-2. Plaintiff does not identify one transaction that should have been recorded differently or explain why Scholastic's reserves were not sufficient to account for the risks that buyers would return books or not pay their bills. Conclusively, in the two years following the class period, the Company **has not recorded any charges due to unanticipated returns or bad debts.** Since the established reserves were actually sufficient, there can be no claim that revenues (net of reserves) were improperly recognized.[1]

---

[1]   Plaintiff cites general accounting rules, Opp. Br. at 8, but does not allege any facts showing these rules were violated, much less materially so. For example, merely alleging a "large volume of returns" does not show that the Company's historical patterns are an unreliable basis upon which to estimate future returns and reserves. SFAS No. 48 ("Revenue Recognition When Right of Return Exists") acknowledges that "**a high rate [of returns is] often found in the publishing industry**," and expressly "permits reasonable aggregations and approximations of product returns." Elbaum Reply Aff., Ex. 2 ¶¶ 14, 20 (emphasis added). Far more details regarding Scholastic's sales, returns and bad debt history, and reserving practices are necessary

"Courts require significant specificity when a plaintiff bases a claim on allegations of channel stuffing or other misleading revenue recognition." *In re Trex Co.*, 212 F. Supp. 2d 596, 611 (W.D. Va. 2002). Rather than plead facts, Plaintiff mixes together conclusory statements about different business units (Continuities and Trade) that utilize different sales channels and reserve estimates. Plaintiff's claim that revenues were inflated by the shipment of "unwanted" books is not supported by any specific allegations. Opp. Br. at 9. The Complaint also does not allege any facts about how future returns are estimated or reserves are calculated in either unit. Nor does Plaintiff "even attempt to approximate the magnitude or degree of those misstatements in relation to [Scholastic's] total financial picture." *Gavish v. Revlon, Inc.*, 2004 WL 2210269, at *16 (S.D.N.Y. 2004). Plaintiff's claim that "millions of dollars" in revenue were improperly recognized is pure boilerplate, and says nothing at all in relation to Scholastic's $2 Billion in annual sales. *See also Gross v. Summa Four, Inc.*, 93 F.3d 987, 996 (1st Cir. 1996).[2]

**B.     Reserves**

Plaintiff does not dispute that the Company accurately reported the reserves recorded on its books, including its decision to reduce the rate at which reserves were established in 2005.

---

to show any improper revenue recognition. For these reasons, Plaintiff's reliance on *In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158 (S.D.N.Y. 2003), and *In re Nortel Networks Corp.*, 238 F. Supp. 2d 613 (S.D.N.Y. 2003), is misplaced.

[2]     Plaintiff's purported "confidential informants" do not provide sufficient details to allege any misstatements, much less any misstatements made with scienter. Only CI 1 is alleged to have any accounting expertise and he did not provide any specific information to support the claims. CI 5 apparently never worked at Scholastic (and certainly not in either Continuities or Trade), so the allegations attributed to CI 5 should be disregarded, including the claims of end-of-quarter sales spikes, unrealistic sales goals, and product lost in the distribution channel. Compl. ¶¶ 52, 56, 58, 70, 85(e)-(h). CI 9 left the Company before the class period. Compl. ¶¶ 30, 79. Plaintiff's claim that courts do not evaluate the basis for a CI's knowledge on a motion to dismiss is simply wrong. *See, e.g., Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 141-42 (D. Conn. 2007); *In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 851-52 (N.D. Tex. 2005); *see also Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) (courts should apply a "steep" discount to anonymous allegations).

Accordingly, there can be no fraud claim. *In re Nokia OYJ (Nokia Corp.)*, 423 F. Supp. 2d 364, 395 (S.D.N.Y. 2006). Plaintiff suggests that in late 2005 or early 2006 (after the last challenged statement), Scholastic should have increased its reserve assumptions in some unspecified amount. Opp. Br. at 8. But Plaintiff has not given the Court any facts showing the Company's reserves were fraudulently low, at what time, or by how much. And, after the class period, the Company has not recorded any charges for unanticipated returns or bad debts, which would have happened if the established reserves turned out to be insufficient. Plaintiff quibbles with the Company's business judgment in estimating its reserves, but this is not actionable under the securities laws. *In re CIT Group, Inc.*, 349 F. Supp. 2d 685, 689 (S.D.N.Y. 2004).

    **C.**    **Operational Problems Resulting From the FTC Consent Decree**

The Complaint does not allege any facts that suggest the Company's financial reports failed to reflect whatever impact the FTC Consent Decree may have had on its results. Plaintiff also does not "approximate the magnitude" of this supposed impact, and cannot show that the impact was material to Scholastic. *Gavish*, 2004 WL 2210269, at *16. Rather, Plaintiff merely claims that the Defendants "did not disclose that the operations of the At Home Division were negatively impacted" by the Consent Decree. Opp. Br. at 13. But Scholastic repeatedly disclosed the challenges facing the Continuities business both before and after the Consent Decree, *see, e.g.*, Elbaum Aff. Ex. 3 at 15; Elbaum Reply Aff. Ex. 1 at 23, and the Decree was filed in federal court and announced by the FTC. There is no duty to disclose any additional operational problems. *In re Winn-Dixie Stores, Inc.*, 531 F. Supp. 2d 1334, 1347-48 (M.D. Fla. 2007); *In re N. Telecom Ltd.*, 116 F. Supp. 2d 446, 459 (S.D.N.Y. 2000). Moreover, "the federal securities laws do not require a company to accuse itself of wrongdoing," *In re Citigroup, Inc.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004), especially when, as here, the Company did not admit any misconduct in the Consent Decree. Elbaum Aff. Ex. 13 at 1 (decree entered "without

3

Defendants admitting liability for any of the matters alleged in the Complaint").[3]

### D. U.K. Operations

The Complaint does not identify a single undisclosed problem in the Company's U.K. operations or estimate its supposed impact on Scholastic's results. Starting in July 2005, the Company disclosed that it had experienced "declines in the U.K. as we invest in restructuring that business," and that it had made "significant changes … to rebuild our Trade business." Elbaum Aff. Ex. 7 at 6-7. Plaintiff calls this a "half truth," Opp. Br. at 13, but never says what Defendants should have disclosed. Having disclosed problems, Defendants were "not required to take a gloomy, fearful or defeatist view of the future." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). In addition, Plaintiff relies solely on a conclusory statement attributed to CI 1, who is not alleged to have ever worked in the U.K. Compl. ¶¶ 22, 42.[4]

### E. Earnings Forecasts

Buried in a footnote, and without any citations to the Complaint, Plaintiff claims the Defendants' forward-looking statements are not protected by the PSLRA safe harbor. This is not sufficient. The Company provided risk disclosures relating to the "Do Not Call" legislation, its

---

[3]  Plaintiff's challenge to the Company's March 2005 statement that it had experienced "higher profitability in all operating segments last quarter," (Compl. ¶ 92), ignores the fact that Continuities is only one of four divisions in the Children's Book segment, not a stand-alone segment. Opp. Br. at 12. Nothing in the Complaint suggests this statement about the actual four operating segments is false. And it did not create any additional disclosure obligations. Nor is there any support for the speculation that "much of the profitability was due to shipping unwanted merchandise to consumers in violation of the Grolier Consent Decree." Opp. Br. at 12. The Company stated that profits in Children's Books increased because of improvements in Trade and Book Fairs, which offset lower revenues in Continuities. Elbaum Aff. Ex. 5 at 1.

[4]  Nor is there any merit to Plaintiff's claim that the Company's positive statements about the International segment were inaccurate. Opp. Br. at 13. Scholastic's International segment also includes operations in Australia, Canada, New Zealand, Asia and elsewhere. Elbaum Reply Aff., Ex. 1 at 6-7. The Company reported that the growth in International was "primarily due to higher operating profit in Australia." *Id.*, Ex. 1 at 25; Elbaum Aff., Ex. 5 (citing Australia and favorable exchange rates). Plaintiff does not allege that these statements were false.

4

new strategies in Continuities, and its estimates of returns. Elbaum Aff. Ex. 8 at 16, 28-29. The Complaint does not allege a single fact that shows Mr. Robinson or Ms. Winston issued forecasts with knowledge they were untrue. *Nokia*, 423 F. Supp. 2d at 400.[5]

## II. PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION

Plaintiff claims that the alleged fraud was revealed in two press releases dated December 16, 2005 and March 23, 2006. But these releases did not disclose any information that Plaintiff alleges had been concealed. Therefore, the supposed fraud could not have caused the stock drop. Plaintiff ignores the overwhelming authority that requires dismissal on this ground alone.

- **Second Circuit:** "These allegations do not amount to a corrective disclosure, however, because they do not reveal to the market the falsity of the prior recommendations." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 n.4 (2d Cir. 2005); *see also id.* at 173.

- **Judge Pauley:** "[W]here a disclosure does not reveal the falsity of the alleged misstatements, it does not qualify as 'corrective.'" *In re Omnicom Group, Inc.*, 2008 WL 243788, at *6 (S.D.N.Y. Jan. 29, 2008).

- **Judge Batts:** "[T]he loss causation requirement is satisfied only if the public disclosure causing injury addressed the specific fact allegedly concealed." *In re Rhodia S.A.*, 2007 WL 2826651, at *16 (S.D.N.Y. Sept. 26, 2007).

- **Judge Daniels:** Loss causation "requires a 'showing that plaintiff suffered an economic loss fairly attributable to the public airing of the alleged fraud . . . .'" . . . "It is the exposure of the falsity of the fraudulent representation that is the critical component of loss causation." *In re Winstar Communications*, 2006 WL 473885, at *13-14 (S.D.N.Y. Feb. 27, 2006) (quotations omitted).

- **Judge Cote:** "A concealed fact cannot cause a decrease in the value of a stock before the concealment is made public." *In re WorldCom, Inc.*, 2005 WL 375314, at *6 (S.D.N.Y. Feb. 17, 2005).

Here, the December 2005 press release refers to the previously-disclosed challenges in Continuities and the U.K. operations **without adding any new information**. The challenges facing the Continuities business were first disclosed in March 2004, repeated in each of the

---

[5]  Plaintiff abandoned any claims based on the Sarbanes-Oxley certifications.

5

Company's following quarterly and annual reports, and highlighted as a risk factor in the August 2005 Form 10-K. *See* Elbaum Aff. Exs. 1-5; 6A; 8 at 29; 9. Similarly, starting in July 2005, the Company disclosed that it was taking steps to "rebuild" its U.K. business, which had experienced "declines." *Id.* Ex. 7, at 6, 7; *see also* Ex. 9 at 1-2. In addition, the poor results announced in the March 2006 press release **related to different business units** (Book Clubs, Book Fairs and Educational Publishing) than the units at issue in the Complaint (Continuities, Trade and U.K.). The only new information in the press releases related to market-wide factors (such as Hurricane Katrina) and company-specific factors (such as challenges in separate business units). The Company did not restate any financial reports or record any charges for unanticipated returns or bad debts. There was **nothing at all** in the reports about the "fraud" alleged in the Complaint.

Plaintiff cannot fix this gaping hole in the Complaint. Rather, Plaintiff seeks to distract the Court with a meaningless debate about whether some types of partial disclosures could, in theory, be sufficient. Opp. Br. at 23-24. There was no corrective disclosure here of any kind.

### III.   PLAINTIFF FAILS TO ALLEGE SCIENTER

Plaintiff concedes that it must allege facts giving rise to a strong inference of fraudulent intent, Opp. Br. at 14, but the Complaint does not come close to satisfying either pleading theory recognized in this Circuit. *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001).

#### A.   Plaintiff Has Not Pled Motive and Opportunity

Plaintiff cannot dispute that Ms. Winston sold no stock at all, while Mr. Robinson exercised options representing only 3% of his substantial holdings, received large stock grants from the Company, and remained Scholastic's largest shareholder throughout the class period. These sales do not support **any inference** of scienter. As the court held in *In re Initial Public Offering*, cited by Plaintiff, "insider sales that represent less than ten percent of that insiders' total holdings are insufficiently 'unusual' to permit an inference of scienter." 241 F. Supp. 2d

6

281, 367-68 (S.D.N.Y. 2003); *see also* Defs. Br. at 20 (citing five cases ignored by Plaintiff). SEC filings also establish that "these options were exercised in accordance with the instructions of Mr. Robinson's former spouse pursuant to a matrimonial settlement agreement." Elbaum Aff. Ex. 14 at 10; Ex. 15. Since Mr. Robinson did not make the investment decisions, there can be no inference of scienter. *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1337 (S.D. Fla. 2004).

Plaintiff's mantra that $23 million of stock in total was sold by Mr. Robinson and eight non-defendants is, by its own admission, beside the point. Plaintiff states that courts look at "the amount of profit from the sales," not the gross amount. Opp. Br. at 21. Here, the sales involved primarily the exercise of options and the net amount is only $7.18 million, as calculated from the SEC filings before the Court without objection. In any event, the dollar amount cannot alone establish scienter. *eSpeed*, 457 F. Supp. 2d 266, 290 (S.D.N.Y. 2006) (cited by Plaintiff).

The sales by eight non-defendants are equally insufficient. As Plaintiff does not allege that any of these individuals made statements, they had no "opportunity" to commit fraud. *Chill v. General Elec. Co.*, 101 F.3d 263, 267 n.4 (2d Cir. 1996). Plaintiff ignores *Chill*, and does not cite any precedent for its claim that sales by non-speaking, non-defendants support an inference that the named defendants committed fraud. Opp. Br. at 22 n.23. Plaintiff also does not dispute any of the "plausible nonculpable explanations" for these trades, *Tellabs*, 127 S. Ct. 2499, 2510 (2007); Defs. Br., App. A, or that the length of the class period (53 weeks) further "weakens any inference of scienter." *Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 185 (4th Cir. 2007).

Plaintiff's use of the case law is grossly inaccurate. Plaintiff claims that in *Stevelman* the Second Circuit held that "insider sales were sufficient to establish motive even in [the] absence of allegations as to percentage of shares retained." Opp. Br. at 23. But the court did no such thing, finding instead that the CEO had sold "about 40%" of his holdings. 174 F.3d 79, 82 (2d

7

Cir. 1999). Plaintiff argues that the court in *Oxford* held "that stock sales were suspicious where certain insiders separately sold between $621,000 and $5.4 million worth of stock." Opp. Br. at 22. The court, however, found that one defendant had sold $37.4 million and the trades by the defendants ranged from 17% to 67% of their holdings during one period and from 11% to 100% during another. 187 F.R.D. 133, 140 (S.D.N.Y. 2000); *see MicroStrategy*, 115 F. Supp. 2d 620, 644 (E.D. Va. 2000) (certain defendants sold 35.6%, 50.0%, 51.8%, and 85.6% of holdings).

### B. Plaintiff Has Not Pled Conscious Misbehavior or Recklessness

The Second Circuit requires that "[w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). Plaintiff does not identify a single report or communication to Mr. Robinson or Ms. Winston. As the court held in *eSpeed*, cited by Plaintiff, this failure is "ordinarily fatal to a plaintiff's effort to plead scienter based on conscious misbehavior or recklessness." 457 F. Supp. 2d at 292. Since there are no facts alleged in the Complaint, Plaintiff invites the Court to "presume[]" that they had "knowledge about the Company's improper accounting practices" "by the nature of their positions." Opp. Br. at 15. This pleading tactic was universally rejected even before *Tellabs*. *See, e.g.*, *Nokia*, 423 F. Supp. 2d at 406; *Kinsey v. Cendant Corp.*, 2005 WL 1907678, at *5 (S.D.N.Y. 2005).[6]

Plaintiff's reliance on this Court's decision in *In re Winstar Communications*, 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006), is misplaced. In *Winstar*, the plaintiff alleged a series of fraudulent transactions that hid losses of $867 million and, once revealed, led to Winstar's bankruptcy. This Court drew an inference of scienter because the plaintiff alleged in detail that the defendants had been personally involved in numerous sham transactions in the company's

---

[6] In addition, when, as here, a plaintiff fails to show any motive, the "strength of the circumstantial allegations must be correspondingly greater." *Kalnit*, 264 F.3d at 142.

8

"core operations," especially its relationship with Lucent, as well as the decisions to improperly recognize revenues. *Id.* at *4, 8. This Court found the defendants' alleged personal involvement was sufficient. But Plaintiff's claims are not comparable in any way, and its open-ended "core operations" theory cannot possibly create the "cogent" inference of scienter required by *Tellabs*. As an initial matter, Plaintiff has not alleged that Continuities is a "core operation" of Scholastic. To the contrary, during fiscal 2005, the At Home business generated only 7% of the Company's total revenues, and an operating loss of ($2.8) million as compared to total operating income of $134.9 million. Elbaum Reply Aff., Ex. 1 at 20, 24. Moreover, unlike *Winstar*, Plaintiff alleges only that Mr. Robinson and Ms. Winston had "access" to information, not that they were personally involved in any sham transactions or improper revenue recognition. Thus, the general rule in *Winstar* applies here: "scienter cannot be inferred solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information." 2006 WL 473885, *7.[7]

Finally, the supposed "red flags" cited by Plaintiff fail to support an inference of scienter. Opp. Br. at 18-19. First, Plaintiff does not allege that any of these flags was reported to either Mr. Robinson or Ms. Winston. *Novak*, 216 F.3d at 309. Second, the Complaint does not show that the confidential informants have sufficient personal knowledge to support their allegations. These allegations should be disregarded. *Malin*, 499 F. Supp. 2d at 141. Third, Plaintiff merely relies on the same conclusory allegations that fail to show the challenged statements were false, let alone made with fraudulent intent. For example, the claims of "sales spikes" at the end of

---

[7] The broad statements in *In re Atlas Air Worldwide Holdings, Inc.*, 324 F. Supp. 2d 474 (S.D.N.Y. 2004), are similarly limited to that case; the plaintiff alleged the defendants were directly involved in sham transactions that were so large the company filed for bankruptcy after they were revealed. *See Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 774-75 (S.D.N.Y. 2006) (distinguishing *Atlas*). In *eSpeed*, 457 F. Supp. 2d at 294, the court refused to impute knowledge of accounting errors because the complaint alleged no facts to support the claim.

9

quarters or an alleged failure to monitor returns are much too vague.  Plaintiff's passive voice assertion that "meetings were held to discuss the large volumes of returns" highlights the crucial gaps in the Complaint.  Opp. Br. at 18.  Plaintiff did not and cannot allege that the Defendants participated in any such meetings or that the Company's reserves were insufficient to account for the returns.  Similarly, allegations of aggressive sales goals do not support an inference of scienter.  *Bristol-Myers Squibb*, 312 F. Supp. 2d 549, 566-68 (S.D.N.Y. 2004).  At most, Plaintiff has alleged isolated incidents of mismanagement, not securities fraud.  *Acito*, 47 F.3d at 53.

## CONCLUSION

Plaintiff has not alleged any concrete facts showing any fraud, and makes no attempt to estimate any supposed impact on the Company's financial statements.  For this reason alone, the Complaint should be dismissed.  In addition, Plaintiff has not connected its allegations of fraud with the disclosures that precipitated the stock drop.  That is also sufficient by itself to dismiss the Complaint.  Finally, far more is required to support a claim of fraud than (1) the exercise of options by the CEO representing only 3% of his substantial holdings, made at his former spouse's direction pursuant to a matrimonial agreement, and no sales by the former CFO; (2) the coincidence of sales by non-defendants during a long class period; and (3) broad-brush allegations of access to information based on high executive positions.  For these reasons, we respectfully ask that the Complaint be dismissed in its entirety and with prejudice.

Dated: May 28, 2008  
       New York, New York

Respectfully submitted,  
SIMPSON THACHER & BARTLETT LLP

By: ____/s/ Michael J. Chepiga_____  
Michael J. Chepiga (mchepiga@stblaw.com)  
David Elbaum (delbaum@stblaw.com)  
425 Lexington Avenue  
New York, New York  10017  
Telephone: (212) 455-2000  
*Attorneys for Defendants*